***********
This matter was reviewed by the Full Commission based upon the record of proceedings before Deputy Commissioner Garner, along with the briefs and arguments on appeal. The appealing party has not shown good grounds to receive further evidence or to amend the prior Opinion and Award. Accordingly, the Full Commission adopts and affirms the Deputy Commissioner's holding and enters the following opinion and award.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following which was entered into by the parties at the hearing before the Deputy Commissioner on 22 May 2002 as:
 STIPULATIONS
1. At the time of the alleged injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At such time, an employment relationship existed between plaintiff and Employer-Defendant.
3. The party on the risk was correctly named.
4. The plaintiff's average weekly wage is $444.00.
5. The Employer-Defendant has not disputed that plaintiff sustained a compensible injury to his right upper extremity on 22 May of 2001.
6. The plaintiff alleges that the defendant denies that the defendant is liable for the treatment of plaintiff's low back and treatment for depression.
7. Various medical records and other documents have been stipulated into evidence with the pre-hearing agreement.
 ***********
Based upon the evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. Plaintiff sustained a work-related injury on 22 May 2001 when a piece of metal plaintiff had inserted into a press buckled, striking his right shoulder.
2. Plaintiff presented to Hart Industrial Clinic on 23 May 2001 complaining of shoulder pain and was diagnosed with acute contact strain and mild cervical strain.
3. An MRI of plaintiff's right shoulder was ordered on 4 June 2001 and performed on 12 of June 2001, which revealed supraspinatus stenitis tendonitis without any obvious tear.
4. Plaintiff was referred to Dr. Donald A. Campbell of Carolina Orthopedic Specialists, who treated plaintiff's shoulder pain with steroidal injections and ordered physical therapy.
5. Dr. Campbell ordered an MRI of plaintiff's cervical spine on 27 August 2001, which was performed at Blue Ridge Radiology on 29 August 2001.
6. Dr. Campbell interpreted the MRI as normal considering a previous distal clinectomy plaintiff had undergone in the late 1980s.
7. Finding no objective findings of pathology, Dr. Campbell discounted plaintiff's physical therapy, opined that plaintiff had no permanent impairment, recommended that plaintiff return to work and referred plaintiff to Dr. Scott M. McCloskey for neck discomfort that was, in his opinion, unrelated to the injury of 22 May 2001.
8. After reviewing the MRI of plaintiff's cervical spine, Dr. McClosky noted that there was congenital stenosis, but no frank disc herniation, subluxation, or evidence of acute injury. Dr. McClosky diagnosed plaintiff with the right post traumatic tardy ulnar palsy and right carpal tunnel syndrome, for which plaintiff underwent a right carpal tunnel release on 23 October 2001 and referred plaintiff to Dr. Jerry Barron for a second opinion evaluation of the plaintiff's right shoulder.
9. Dr. Barron diagnosed plaintiff with rotator cuff tear and impingement and recommended that plaintiff undergo an orthoscopic decompression of his right shoulder.
10. On 2 January 2002, plaintiff reported to Dr. McClosky's office, ambulating with the assistance of a walker and complaining of low back and right leg pain.
11. By letter filed 10 January 2002, plaintiff requested that the Industrial Commission approve back/spine treatment by Dr. Scott McClosky.
12. Plaintiff's medical records reveal no reference of any complaint by plaintiff of low back pain to any physician who was treating him from 22 May 2001 until 2 January 2002, when he reported to Dr. McCloskey's office ambulating with the assistance of the walker and complaining of low-back and right leg pain.
13. In his deposition testimony, Dr. McCloskey testified that he began treating plaintiff in September of 2001, and that plaintiff did not complain to him of low-back pain until 2 January 2002.
14. Dr. McClosky further testified that he found it unusual that plaintiff failed to complain of back pain over the course of his treatment.
15. Dr. Maxey testified that when plaintiff was first presented for evaluation and treatment on 23 January 2002, plaintiff reported that his back pain began in May of 2001.
16. However, plaintiff's medical records did not support that plaintiff's back pain resulted from his compensable injury.
17. Dr. Maxey further testified that he had not received the records of plaintiff's treatment between May 2001 and 23 January and would have no explanation why plaintiff's medical records between May 2001 and 23 January 2002 would not have referenced back pain.
18. Dr. Kahaga Ashenugen testified in his deposition that he had seen plaintiff on only two occasions.
19. Plaintiff first presented to Good Samaritan Clinic for a mental health assessment on 18 December 2001.
20. It appears the plaintiff did not seek treatment for mental health issues between 22 May 2001, and 18 December 2001.
21. On 10 January 2002, plaintiff was seen by Dr. Kahaja Ahsanuddin's wife who was a psychiatrist and who diagnosed plaintiff with depression.
22. On 13 February 2002, plaintiff was first seen by Dr. Kahaja Ahsanuddin.
23. At that time, plaintiff expressed concern that he needed surgery for his degenerative spinal disease, but that he did not have insurance.
24. Dr. Kahaja Ahsanuddin further testified that the ideology of depression was not fully understood and that any crisis can revive a dormant depression or aggravate existing depression.
25. Plaintiff first presented to Dr. Campbell on 25 June 2001.
26. Dr. Campbell testified that on 5 September 2001, plaintiff complained that he had experienced pain in this neck radiating down his arm while riding his motorcycle.
27. Dr. Campbell further testified that he did not feel the plaintiff's cervical pain was related to his workers' compensation injury.
28. According to Dr. Campbell, at no point during the course of treatment by Dr. Campbell from 25 June 2001 through 5 September 2001 did plaintiff complain to Dr. Campbell of low-back pain. Dr. Campbell testified that had plaintiff complained of low-back pain, he would have documented the complaint.
 ***********
Based upon the foregoing findings of facts, the full commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff has not met his burden of proving by the greater weight of the evidence that his low back problem and depression resulted from the compensable injury he sustained on 22 May 2001. N.C. Gen. Stat. § 97-2.
2. As plaintiff has not met his burden of proving that his low back problems or depression are causally related to his potential claim, he cannot prevail with respect to his request for authorization of the treatment he has received for his low back and for depression. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of facts and the conclusions of law, the full commission confirms the holding of Deputy Commissioner and enters the following:
 ORDER
1. Plaintiff's request for medical treatment of his back and for his depression is hereby DENIED.
2. Each side shall bear its own costs of this appeal.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER